UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUMMIT PROPERTIES INTERNATIONAL, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> LADIES PROFESSIONAL GOLF ASSOCIATION, <br><br> Defendant. | 07 Civ. 10407 (LBS) <br> ECF Case <br><br> **DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** <br><br> **JURY TRIAL DEMANDED** |

Defendant Ladies Professional Golf Association ("LPGA" or "Defendant"), by and through its undersigned attorneys, states for its Answer to the Complaint of Plaintiff Summit Properties International, L.L.C. ("SPI"), Affirmative Defenses, and Counterclaims as follows:

## AS TO JURISDICTION AND VENUE

1.      Paragraph 1 states only legal conclusions to which no response is necessary. To the extent that a response is required, LPGA denies the allegations of paragraph 1.

2.      Paragraph 2 states only legal conclusions to which no response is necessary. To the extent that a response is required, LPGA denies the allegations of paragraph 2.

3.      Paragraph 3 states only legal conclusions to which no response is necessary. To the extent that a response is required, LPGA denies the allegations of paragraph 3.

4.      Paragraph 4 states only legal conclusions to which no response is necessary. To the extent that a response is required, LPGA denies the allegations of paragraph 4.

## AS TO JURISDICTION AND VENUE

5.      LPGA denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 5.

6.    LPGA admits the allegations of paragraph 6 to the extent they concern LPGA, and denies knowledge or information sufficient to form a belief as to the allegations as to SPI's business activities or dealings with entities unrelated to LPGA.

7.    LPGA admits the allegations of paragraph 7.

8.    LPGA denies the allegations of paragraph 8, except that it admits that it is a women's professional sports association whose activities include sanctioning and promoting professional golf tournaments and other programs intended to promote women's and youth golf.

## AS TO THE FIRST COUNT
(Breach of Contract – Damages)

9.    LPGA admits the allegations of paragraph 9.

10.    LPGA denies the allegations of paragraph 10, except admits that LPGA and SPI entered into the Agreement referenced in paragraph 10 on or about November 1, 2002. LPGA further denies the Agreement is referenced in context or in its entirety in paragraph 10 and denies Plaintiff's characterizations of the Agreement and its contents. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

11.    LPGA denies the allegations of paragraph 11.

12.    LPGA denies the allegations of paragraph 12, denies the Agreement is referenced in context or in its entirety in paragraph 12, and denies Plaintiff's characterizations of the Agreement and its contents. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

13.    LPGA denies the allegations of paragraph 13, denies the Agreement is referenced in context or in its entirety in paragraph 13, and denies Plaintiff's characterizations of the

Agreement and its contents. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

14.    LPGA denies the allegations of paragraph 14, denies the Agreement is referenced in context or in its entirety in paragraph 14, and denies Plaintiff's characterizations of the Agreement and its contents. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

15.    LPGA denies the allegations of paragraph 15, and denies the Agreement is referenced in context or in its entirety in paragraph 15. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

16.    LPGA denies the allegations of paragraph 16, denies the Agreement is referenced in context or in its entirety in paragraph 16, and denies Plaintiff's characterizations of the Agreement and its contents. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

17.    LPGA denies the allegations of paragraph 17, denies the Agreement is referenced in context or in its entirety in paragraph 17, and denies Plaintiff's characterizations of the Agreement and its contents. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

18.    LPGA denies the allegations of paragraph 18, denies the Agreement is referenced in context or in its entirety in paragraph 18, and denies Plaintiff's characterizations of the Agreement and its contents. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

19.    LPGA denies the allegations of paragraph 19, denies the Agreement is referenced in context or in its entirety in paragraph 19, and denies Plaintiff's characterizations of the

Agreement and its contents. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

20.　　LPGA denies the allegations of paragraph 20, denies the Agreement is referenced in context or in its entirety in paragraph 20, and denies Plaintiff's characterizations of the Agreement and its contents. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

21.　　LPGA denies the allegations of paragraph 21, denies the Agreement is referenced in context or in its entirety in paragraph 21, denies Plaintiff's characterizations of the Agreement and its contents, and avers that it provided information on its approval process. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

22.　　LPGA denies the allegations of paragraph 22, and denies the Agreement is referenced in context or in its entirety in paragraph 22. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

23.　　LPGA denies the allegations of paragraph 23, denies the Agreement is referenced in context or in its entirety in paragraph 23, and denies Plaintiff's characterizations of the Agreement and its contents. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

24.　　LPGA denies the allegations of paragraph 24, denies the Agreement is referenced in context or in its entirety in paragraph 24, and denies Plaintiff's characterizations of the Agreement and its contents. LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

25.    LPGA denies the allegations of paragraph 25, denies the Agreement is referenced in context or in its entirety in paragraph 25, and denies Plaintiff's characterizations of the Agreement and its contents.  LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

26.    LPGA denies the allegations of paragraph 26, denies the Agreement is referenced in context or in its entirety in paragraph 26, and denies Plaintiff's characterizations of the Agreement and its contents.  LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

27.    LPGA denies the allegations of paragraph 27, and further denies that the hypothetical example in paragraph 27 accurately characterizes the Agreement and its contents.

28.    LPGA denies the allegations of paragraph 28, and further denies that the hypothetical example in paragraph 28 accurately characterizes the Agreement and its contents.

29.    LPGA denies the allegations of paragraph 29, denies the Agreement is referenced in context or in its entirety in paragraph 29, and denies Plaintiff's characterizations of the Agreement and its contents.  LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

30.    LPGA denies the allegations of paragraph 30, denies the Agreement is referenced in context or in its entirety in paragraph 30, and denies Plaintiff's characterizations of the Agreement and its contents.  LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

31.    LPGA denies the allegations of paragraph 31, denies the Agreement is referenced in context or in its entirety in paragraph 31, and denies Plaintiff's characterizations of the

Agreement and its contents.  LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

32.    LPGA denies the allegations of paragraph 32, denies the Agreement is referenced in context or in its entirety in paragraph 32, and denies Plaintiff's characterizations of the Agreement and its contents.  LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

33.    LPGA denies the allegations of paragraph 33, denies the Agreement is referenced in context or in its entirety in paragraph 33, and denies Plaintiff's characterizations of the Agreement and its contents.  LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

34.    LPGA denies the allegations of paragraph 34, denies the Agreement is referenced in context or in its entirety in paragraph 34, and denies Plaintiff's characterizations of the Agreement and its contents.  LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

35.    LPGA denies the allegations of paragraph 35, denies the Agreement is referenced in context or in its entirety in paragraph 35, and denies Plaintiff's characterizations of the Agreement and its contents.  LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

36.    LPGA denies the allegations of paragraph 36.

37.    LPGA denies the allegations of paragraph 37.

38.    LPGA denies the allegations of paragraph 38.

39.    LPGA denies the allegations of paragraph 39 and explicitly denies any breaches by LPGA, except that it denies knowledge or information sufficient to form a belief as to the

allegation of paragraph 39 as to whether Plaintiff felt it was in "uncomfortable and unproductive positions."

40.    LPGA denies the allegations of paragraph 40.

41.    LPGA denies the allegations of paragraph 41.

42.    LPGA denies the allegations of paragraph 42.

43.    LPGA denies the allegations of paragraph 43.

44.    LPGA denies the allegations of paragraph 44, except admits that LPGA asked Plaintiff for marketing information and other royalty information, in accordance with its explicit and implied contractual rights, and that SPI provided some of the information LPGA requested.

45.    LPGA denies the allegations of paragraph 45, except admits that it asked Plaintiff for information on its representation of LPGA, in accordance with its explicit and implied contractual rights.

46.    LPGA denies the allegations of paragraph 46, except admits that, at times during the parties' relationship, Plaintiff provided some of the information requested by LPGA.

47.    LPGA denies the allegations of paragraph 47, except admits that it sent a letter to Plaintiff on or about February 6, 2006. LPGA further denies that this letter is referenced in context or in its entirety in paragraph 47, and denies Plaintiff's characterizations of this letter and its contents. LPGA further avers that this letter speaks for itself, and respectfully refers the Court to this letter for the contents thereof.

48.    LPGA denies the allegations of paragraph 48, except admits that it received a letter from Plaintiff on or about March 7, 2006, and respectfully refers the Court to this letter for the contents thereof.

49.    LPGA denies the allegations of paragraph 49.

50.    LPGA denies the allegations of paragraph 50, except admits that it sent a letter to Plaintiff on or about March 8, 2006. LPGA further denies that this letter is referenced in context or in its entirety in paragraph 50, and denies Plaintiff's characterizations of this letter and its contents. LPGA further avers that this letter speaks for itself, and respectfully refers the Court to this letter for the contents thereof.

51.    LPGA denies the allegations of paragraph 51, except admits that it sent a letter to Plaintiff on or about March 8, 2006. LPGA further denies that this letter is referenced in context or in its entirety in paragraph 51, and denies Plaintiff's characterizations of this letter and its contents. LPGA further avers that this letter speaks for itself, and respectfully refers the Court to this letter for the contents thereof.

52.    LPGA denies the allegations of paragraph 52, except admits that it received a letter from Plaintiff on or about March 15, 2006, and respectfully refers the Court to this letter for the contents thereof.

53.    LPGA denies the allegations of paragraph 53, except admits that a meeting occurred in Atlanta in April 2006 between representatives of LPGA and Plaintiff.

54.    LPGA denies the allegations of paragraph 54 and further denies that Plaintiff performed fully under the Agreement, except that LPGA admits that it terminated the Agreement by letter dated June 2, 2006 in light of SPI's material breaches of the Agreement.

55.    LPGA denies the allegations of paragraph 55 and further denies that it made any false claims. LPGA further denies Plaintiff's characterizations of this letter and its contents. LPGA further avers that this letter speaks for itself, and respectfully refers the Court to this letter for the contents thereof.

56.    LPGA denies the allegations of paragraph 56 and further denies Plaintiff's characterizations of this letter and its contents. LPGA further avers that this letter speaks for itself, and respectfully refers the Court to this letter for the contents thereof.

57.    LPGA denies the allegations of paragraph 57.

58.    LPGA denies the allegations of paragraph 58, but avers that at the time of the termination, SPI had made annual guarantee payments to LPGA from 2000 to 2005 under the Agreement that totaled approximately $1,714,375.

59.    LPGA denies the allegations of paragraph 59, and further denies knowledge or information sufficient to form a belief as to the allegations concerning what Plaintiff has retained in royalty payments from LPGA's licensees.

60.    LPGA denies the allegations of paragraph 60.

61.    LPGA denies the allegations of paragraph 61.

62.    LPGA denies the allegations of paragraph 62.

63.    LPGA denies the allegations of paragraph 63.

64.    LPGA denies the allegations of paragraph 64, except admits that Plaintiff had solicited several licensing agreements on the LPGA's behalf since 2005, and that LPGA entered into several licensing agreements with licensees.

65.    LPGA denies the allegations of paragraph 65.

66.    LPGA denies the allegations of paragraph 66, and further denies that Plaintiff has sustained any damages.

## AS TO THE SECOND COUNT
(Breach of Contract – Injunction)

67.    LPGA restates and incorporates by reference all preceding paragraphs as if set forth fully herein.

68.    LPGA denies the allegations of paragraph 68, denies the Agreement is referenced in context or in its entirety in paragraph 68, and denies Plaintiff's characterizations of the Agreement and its contents.  LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

69.    LPGA denies the allegations of paragraph 69, denies the Agreement is referenced in context or in its entirety in paragraph 69, and denies Plaintiff's characterizations of the Agreement and its contents.  LPGA further avers that the Agreement speaks for itself, and respectfully refers the Court to the Agreement for the contents thereof.

70.    LPGA denies the allegations of paragraph 70, except that it admits it has undertaken efforts to license and merchandise its own Property, as defined by the Agreement, since it properly terminated the Agreement on June 2, 2006.

71.    LPGA denies the allegations of paragraph 71, and further denies that Plaintiff has sustained any irreparable harm or other damages.

72.    LPGA denies the allegations of paragraph 72, and further denies that Plaintiff will sustain any irreparable harm or other damages.

## AS TO THE THIRD COUNT
(Declaratory Judgment)

73.    LPGA restates and incorporates by reference all preceding paragraphs as if set forth fully herein.

74.    LPGA denies the allegations of paragraph 74, except admits that Plaintiff has contended at times that LPGA's termination of the Agreement was invalid.

75.    LPGA admits the allegations of paragraph 75.

76.    Paragraph 76 states only legal conclusions to which no response is necessary. To the extent that a response is required, LPGA denies the allegations of paragraph 76.

77.    Paragraph 77 states only legal conclusions to which no response is necessary. To the extent that a response is required, LPGA denies the allegations of paragraph 77.

## AS TO THE FOURTH COUNT
(Unjust Enrichment)

78.    LPGA restates and incorporates by reference all preceding paragraphs as if set forth fully herein.

79.    LPGA denies the allegations of paragraph 79, except admits that Plaintiff facilitated LPGA's entering into licensing agreements with LPGA's licensees pursuant to Plaintiff's obligations under the Agreement.

80.    LPGA denies the allegations of paragraph 80.

81.    LPGA denies the allegations of paragraph 81.

82.    LPGA denies the allegations of paragraph 82.

83.    LPGA denies the allegations of paragraph 83, and further denies that Plaintiff has sustained any damages.

LPGA reserves the right to amend this Answer to raise and rely upon any additional defenses that become available or apparent during discovery.

## AFFIRMATIVE DEFENSES

As separate and additional defenses, LPGA alleges as follows, without admission that LPGA carries the burden of proof or persuasion on any of the defenses set forth below:

### FIRST AFFIRMATIVE DEFENSE

The Complaint, in whole or in part, fails to state a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because of its breaches of contractual duties owed to LPGA.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's sought relief, in whole or in part, is unavailable to it because of acts establishing that it comes before this Court with unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because LPGA made any and all payment due to it.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of acquiescence and/or waiver.

## SEVENTH AFFIRMATIVE DEFENSE

Any damages alleged to have been incurred by Plaintiff, which LPGA expressly denies, were the result, in whole or in part, of Plaintiff's own actions or inactions, and not as a result of any conduct on the part of LPGA.

## EIGHTH AFFIRMATIVE DEFENSE

If damaged, which LPGA expressly denies, Plaintiff has failed to make reasonable efforts to mitigate damages.

## NINTH AFFIRMATIVE DEFENSE

LPGA is entitled to rights of setoff should any damages be awarded against it, although LPGA expressly denies that Plaintiff has been damaged.

## TENTH AFFIRMATIVE DEFENSE

LPGA hereby gives notice that it intends to rely upon any other defense that is now or may become available or appear during, or as a result of the discovery proceedings in, this action and hereby reserves its rights to amend its reply to assert such defense.

## COUNTERCLAIMS

LPGA asserts these counterclaims against SPI relating to SPI's breach of contract, breach of fiduciary duty, conversion, money had and received, and tortious interference with contractual relations.

## PARTIES

1.    LPGA is a non-profit corporation duly organized and existing under the laws of the State of Ohio, with its principal place of business at 100 International Golf Drive, Daytona Beach, FL 32124.

2.      SPI, upon information and belief, is a Delaware corporation with its principal place of business in New York, New York.

**JURISDICTION & VENUE**

3.      This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332(a)(1) based on diversity of citizenship and pursuant to 28 U.S.C. § 1367, since the claims herein are so related to the claims raised by Plaintiff as to form part of the same case or controversy.

4.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(a) & (c) as Plaintiff/Counterclaim Defendant alleges that its principal place of business is in this District.

**FACTUAL BACKGROUND TO COUNTERCLAIMS**

**The Agreement and SPI's Duties**

5.      On or about October 1, 1999, LPGA and SPI entered into a representation agreement whereby SPI became the LPGA's exclusive representative for its licensing matters outside of the United States.

6.      On or about November 1, 2002, LPGA and SPI entered into an Amended and Restated Representation Agreement (the "Agreement"), which replaced the prior representation agreement.  Under this Agreement, SPI undertook additional duties and obligations in exchange for the right to represent exclusively the LPGA in licensing matters worldwide during the term of the Agreement.

7.      Under the Agreement, SPI collected royalties received from LPGA's licensees for the licensing of LPGA's trademarks and property (the "Royalties" or "Royalty Payments").  Under Section 3, LPGA and SPI were each to receive a share of the Royalty Payments, according to percentages set forth in Section 3.

8.     In exchange for the right to retain a portion of the Royalty Payments, as provided by Section 3, SPI agreed to guarantee that LPGA would receive a certain amount of payments from licensing activities.  If LPGA's share of the Royalty Payments did not exceed certain amounts specified in Section 3, SPI was obligated to make payments to LPGA to ensure that LPGA received certain Guaranteed Amounts.

9.     In Section 3(b) of the Agreement, SPI agreed that it "guarantees that the cumulative aggregate amount of LPGA's Share" shall exceed certain cumulative amounts on specified dates.

10.     From 2000 to 2005, SPI collected Royalties from LPGA's licensees and made payments to LPGA based on the amount of Royalties it allegedly collected.

11.     From the start of the Agreement through June 2, 2006, the total of Royalty Payments that SPI reported receiving from licensees at the end of each calendar year was less than the Guarantee Amount that SPI guaranteed LPGA would receive by the end of each calendar year.  Therefore, SPI was obligated under the Agreement to make payment to LPGA to ensure that LPGA's Share of Royalty Payments was at least the same as the Guarantee Amount each year.

12.     During the period from 2000 to 2005, SPI repeatedly made additional payments to LPGA beyond the Share of Royalty Payments due to LPGA which SPI reported receiving from licensees, in order to provide LPGA with the revenue each year specified by the Guarantee Amount figures in Section 3.

13.     Under Section 2(b) of the Agreement, the parties had the obligation to "work together in good faith to merchandise the Property, with SPI consulting with LPGA on a regular

basis with respect to opportunities which SPI shall pursue, as well as opportunities which SPI has considered but has determined not to pursue."

14.    Under Section 2(b) of the Agreement, SPI was "responsible for servicing the accounts of Licensees (including Square Two) and License Agreements hereunder, including quality control monitoring, collections, reporting and auditing as set forth in this Agreement as SPI has done in prior practice as representative, provided that LPGA shall, in consultation with SPI, have the right to participate in such servicing to the extent LPGA reasonably believes is appropriate."

15.    Under Section 4(a) of the Agreement, SPI was required to provide LPGA with full and accurate royalty statements "on or before the last day of the first month of each calendar quarter."

16.    Under Section 6(b) of the Agreement, SPI was obligated to "conduct on LPGA's behalf quality control reviews and approvals of uses of the Property proposed and submitted by Licensees...."

17.    Section 20(e) of the Agreement prohibited SPI's assignment of the Agreement without the prior consent of LPGA.

**SPI's Breaches and LPGA's Termination for Cause of the Agreement**

18.    In or around January 2006, SPI representatives met with LPGA representatives to discuss future licensing efforts.  During that conversation, LPGA asked SPI for basic information concerning SPI's pursuit of opportunities for LPGA and servicing of LPGA's licensing relationships, as required by Section 2(b) of the Agreement.  SPI was unable to provide this basic information in any satisfactory manner.

19.    In particular, SPI could not even provide LPGA with LPGA's gross annual sales totals from licensing efforts or with rough estimates for the number of products licensed on LPGA's behalf, despite LPGA's having asked previously.

20.    During this meeting, LPGA requested that SPI provide answers to these and other questions concerning SPI's processes for identifying potential licensees, determining if existing licensees were in compliance with their contracts, and SPI's efforts in managing LPGA's relationships generally.  SPI was unable to provide sufficient information on these issues.

21.    After this meeting, LPGA sent Summit a letter on or about February 6, 2006, requesting information on the issues raised at the meeting.  LPGA also asked for basic information concerning gross sales figures and a breakdown by market, profit margins, sales trends, and a full royalty statement, among other things.  LPGA informed SPI that it would not be in a position to approve additional licensing relationships if SPI did not provide necessary underlying data about its current relationships.

22.    SPI responded with a letter dated February 8, 2006, in which SPI refused to provide any of the basic information about its compliance with its contractual obligations.  Rather than provide information as would be expected of a faithful and diligent licensing representative, SPI instead wrote that it "categorically rejects" LPGA's request for additional information.

23.    LPGA responded by writing SPI on or about February 16, 2006 and repeating its request for the basic information which SPI was obligated to provide.  In this letter, LPGA informed SPI that its failure to provide needed information was harming LPGA's development of future licensing efforts.

24.    SPI responded with a letter dated March 15, 2006 that did not provide the necessary and required information about SPI's carrying out of contractual duties.   Rather, SPI admitted that it was not complying with its contractual duties.   In particular, SPI stated that it did not intend to ensure compliance, as required by the Agreement, with all of the provisions of LPGA's written agreements with its licensees because those obligations were too onerous.   SPI confirmed that it "does not always strictly enforce the periodic reporting" with certain licensees.

25.    Further, SPI's March 15, 2006 response confirmed that it never intended to honor its contractual obligations with LPGA to ensure that the licensees comply with all terms of their licensing agreements.

26.    LPGA's letters to SPI constituted the required written notice of SPI's defaults under and breaches of the Agreement.

27.    Despite LPGA's notice, SPI failed to cure its defaults under and breaches of the Agreement.

28.    LPGA gave SPI additional opportunities to remedy its defaults of failing to: provide complete information on royalties, revenues, and products licensed, enforce quality control monitoring and auditing, ensure licenses provided quarterly statements, and consult regularly with LPGA about new opportunities.   SPI did not remedy is defaults under the Agreement, despite LPGA's providing it with several months to do so.

29.    SPI's continued, unremedied defaults constituted an Event of Default under Paragraph 16(a)(ii).

30.    On June 2, 2006, LPGA terminated the Agreement for cause under Paragraph 16(b) of the Agreement, and duly provided notice of this termination to SPI.

31.     SPI's March 15, 2006 response that it did not intend to comply with all of its obligations from the beginning of the Agreement constituted a material misrepresentation under Section16(a)(iv) and was a further basis for the LPGA's termination of the Agreement.

32.     LPGA's termination of the Agreement was proper and effective on the date LPGA gave notice to SPI.

## SPI's Further Breaches and Tortious Acts

33.     Following LPGA's termination of the Agreement, SPI engaged in a pattern and practice of acts designed to interfere with LPGA's business relationships and cause embarrassment.

### *Pan World Brands*

34.     Despite the termination, LPGA permitted SPI to continue discussions in June 2006 about a licensing agreement with a potential licensee, Pan World Brands. LPGA informed SPI that it would require modified representations and warranties in a prospective deal with Pan World Brands.

35.     Rather than act as a faithful agent, SPI undermined the LPGA's efforts by informing Pan World Brands in June 2006 that LPGA's request "came as a bit of a shock to us."

36.     SPI then failed to represent LPGA's interest faithfully when it took an adverse position to LPGA over this issue, and when it wrote that it did not agree with LPGA's e-mails concerning its desire for modifications to proposed language for a new licensing agreement.

37.     SPI then proposed that LPGA agree to a new licensing agreement that was not in LPGA's best interests because of possible litigation exposure not warranted by the guarantees that LPGA would receive.

38.    On July 11, 2006, SPI wrote to members of the LPGA's Board of Directors, rather than the personnel handling licensing efforts, in an apparent attempt to mislead the board members as to LPGA's dealings, including those concerning Pan World Brands.

39.    LPGA repeatedly instructed SPI to cease its contacts with potential licensees on LPGA's behalf or purported behalf.

40.    Despite this, SPI continued to contact Pan World Brands and interfered with LPGA's attempts to deal directly with Pan World Brands.

41.    On several occasions in July 2006, SPI represented that Pan World Brands would not agree to a new licensing agreement containing the modified representations and warranties LPGA sought

42.    Upon information and belief, SPI made these statements in order to mislead LPGA into believing that it would need SPI's continued involvement in its licensing efforts.

43.    Upon information and belief, SPI made these statements with the intent that LPGA enter into an agreement with Pan World Brands more quickly, thereby bolstering SPI's potential claim to share in royalties under such an agreement.

44.    SPI made these statements despite knowing that they were false and that Pan World Brands would agree to changes in the language for LPGA's representations in the Agreement.

45.    SPI continued to interfere with the LPGA's efforts to negotiate directly with Pan World Brands.  On or around July 27, 2006, SPI refused to accede to LPGA's request for the contact information of its contact with Pan World Brands and instead claimed "there is no other issue [to negotiate]."

46.    SPI further represented that Pan World had "categorically rejected any changes in the representations."

47.    SPI further represented on July 27, 2006 that there was "a drop dead date of tomorrow" for any discussions with Pan World and that the "opening we have now is only hours."

48.    Only a few days later, LPGA learned that these representations were false, when on or around August 1, 2006 – after the supposed "drop dead date" – LPGA was able to successfully obtain the representations and warranties language it required and reach an agreement directly Pan World Brands.

49.    These acts constituted breaches of any fiduciary duties that SPI had at the time to whatever extent, if any, SPI had such duties.

50.    SPI's acts, upon information and belief, were undertaken in bad faith so that LPGA would enter into an agreement not in its best efforts from which SPI hoped to profit.

***Total Kids Wear, Inc.***

51.    Despite the termination, LPGA permitted SPI to continue discussions for part of the summer of 2006 about a licensing agreement with another potential licensee, Total Kids Wear, Inc. ("TKWI").

52.    SPI negotiated directly with TKWI for a certain guarantee and informed LPGA that the guarantee was the best deal it could obtain.

53.    LPGA then informed SPI that it did not want SPI to continue its contacts with potential licensees on LPGA's behalf or purported behalf.

54.    After this, LPGA negotiated directly with TKWI and obtained a larger guarantee and greater marketing and promotion commitments than SPI was able to obtain in its negotiations.

55.    SPI's dealings with TKWI are a further example of its poor performance as a representative.

### *One World Golf Group Canada*

56.    After LPGA terminated the Agreement, it permitted SPI to receive certain revenues while the parties attempted to negotiate a resolution of their claims against each other, while reserving its rights to recover these revenues.  LPGA's willingness to allow SPI to retain certain revenues pending resolution of the parties' dispute did not entitle SPI to act as LPGA's agent or misrepresent to third parties that SPI was LPGA's agent.

57.    On or around March 2, 2007, SPI improperly harassed LPGA's licensee, One World Golf Group Canada.  Specifically, without any authority from LPGA, SPI threatened to (a) terminate One World's agreement with LPGA for its alleged failure to pay guarantees and use of LPGA' name and trademarks, (b) report One World to credit agencies, and (c) bring litigation against One World for an alleged breach of its agreement with LPGA.

58.    SPI had no authority to make such threats and was aware of this fact when it made the improper and unauthorized threats.

59.    SPI's improper and unauthorized threats to One World were made with an improper motive and threatened LPGA's business relationship with One World.

60.    In a March 8, 2007 letter, LPGA then informed SPI how stunned it was that Summit, without any authority, threatened an LPGA licensee with legal actions concerning the

use of LPGA's name and trademark.  In this letter, LPGA reminded SPI that it had no authority to contact any of the LPGA's licensees concerning the specifics of LPGA's licenses.

61.    Ironically, only after SPI undertook its unwarranted and harmful actions concerning One World, SPI first sought LPGA's input in dealing with One World.

***SPI's Other Failures***

62.    SPI did not make any guarantee payments after 2005, despite its contention that the termination was invalid and that the Agreement remained effective.

63.    In January 2007, LPGA provided notice to SPI that it had failed to provide a cumulative $2,862,500 in Guarantee Payments as of December 31, 2006, and that this failure would have further constituted a breach of the Agreement, had not LPGA already terminated the Agreement on June 2, 2006.

64.    SPI did not make any further Guarantee Payment after receiving such notice in January 2007.

65.    Since December 2005, SPI has failed to make any payments to LPGA of LPGA Share's of Royalties.

### FIRST COUNTERCLAIM
### (Breaches of Contract)

66.    LPGA realleges and incorporates by reference all preceding paragraphs of the Counterclaim above as if set forth fully herein.

67.    The Agreement constituted a valid and binding agreement between LPGA and SPI.

68.    LPGA fully performed all of its obligations under the Agreement.

69.    SPI materially breached the Agreement, as detailed above, by its repeated failures to comply with its obligations under the Agreement and its failure to cure its defaults.

70.    As a result of SPI's material breaches of the Agreement, LPGA has been damaged in the amount to be determined at trial.

## SECOND COUNTERCLAIM
### (Breach of Fiduciary Duty)

71.    LPGA realleges and incorporates by reference all preceding paragraphs of the Counterclaim above as if set forth fully herein.

72.    As an agent of LPGA, SPI owed LPGA the fiduciary duties of honesty and undivided loyalty to act at all times in the utmost good faith and in LPGA's best interest.

73.    These duties required SPI to place the interests of LPGA ahead of its own and to refrain from taking any actions that caused it to divide its loyalty in a manner against the LPGA's best interest.

74.    During the time that SPI served as LPGA's agent, SPI breached its common law fiduciary duties to LPGA for the reasons set forth above.

75.    As a direct and proximate result of SPI's breaches of fiduciary duties, LPGA has suffered damages in an amount to be determined at trial.

## THIRD COUNTERCLAIM
### (Conversion)

76.    LPGA realleges and incorporates by reference all preceding paragraphs of the Counterclaim above as if set forth fully herein.

77.    After the termination of the Agreement and as part of its efforts to find a mutually satisfactory resolution of the parties' disputes, LPGA allowed SPI to continue to collect Royalty

Payments from LPGA's licensees pending a negotiated resolution of the parties' dispute, despite being under no obligation to do so in light of SPI's material breaches.

78.    SPI's initiation of this lawsuit represents a cessation of the parties' efforts to reach a negotiated settlement, thereby entitling LPGA to immediate possession of the post-termination Royalty Payments in light of SPI's material breaches.

79.    SPI has improperly exercised dominion and control over monies rightfully belonging to LPGA, in a manner inconsistent with and interfering with LPGA's right to possession of them.

80.    Upon information and belief, SPI has retained more than $224,000 in Royalty Payments since the termination of the Agreement.

81.    LPGA has demanded that SPI return these post-termination Royalty Payments to LPGA. Despite this demand, SPI has failed to return these Payments to LPGA.

82.    SPI's acts constitute a conversion of property rightfully belonging to LPGA.

83.    By reason of the foregoing, LPGA has been damaged in an amount to be determined with specificity at trial, but not less than $224,000, plus interest.

## FOURTH COUNTERCLAIM
### (Money Had and Received)

84.    LPGA realleges and incorporates by reference all preceding paragraphs of the Counterclaim above as if set forth fully herein.

85.    SPI has improperly exercised dominion and control over the post-termination Royalty Payments rightfully belonging to LPGA, in a manner inconsistent with and interfering with LPGA's right to possession.

86.    LPGA has demanded that SPI return these post-termination Royalty Payments to LPGA. Despite this demand, SPI has failed to return these Payments to LPGA.

87.    By reason of the foregoing, LPGA has been damaged in an amount to be determined with specificity at trial, but not less than $224,000, plus interest.

### FIFTH COUNTERCLAIM
### (Tortious Interference with Business Relations)

88.    LPGA realleges and incorporates by reference all preceding paragraphs of the Counterclaim above as if set forth fully herein.

89.    LPGA has had and has ongoing business relationships with its licensees, including without limitation, Pan World Brands, Total Kids Wear, Inc., and One World Golf Group Canada.

90.    SPI, through its statements to these licensees, has interfered with those business relationships.

91.    SPI's interference was carried out intentionally by dishonest, unfair, and improper means, and constituted willful or wanton negligence or recklessness, and constituted conduct that was aggravated beyond mere negligence.

92.    SPI's interference caused injury to LPGA's relationships with its licensees.

93.    As the result of SPI's interference, LPGA has suffered damages in an amount to be determined at trial, and should be awarded punitive damages in an amount to be determined at trial.

**WHEREFORE**, LPGA demands judgment against SPI as follows:

(a)     a dismissal of the Complaint in its entirety, with prejudice;

(b)     on the first counterclaim, damages in the amount to be determined at trial;

(c)     on the second counterclaim, damages in the amount to be determined at trial;

(d)     on the third counterclaim, damages in the amount to be determined at trial;

(f)     on the fourth counterclaim, damages in the amount to be determined at trial, but in no event less than $224,000, plus interest;

(g)     on the fifth counterclaim, compensatory damages in the amount to be determined at trial, but in no event less than $224,000, plus interest, and punitive damages in the amount to be determined at trial,

(h)     granting LPGA its full costs and reasonable attorneys' fees incurred in prosecuting these counterclaims and defending this action; and

(i)     granting LPGA such other and further relief as the Court deems just and proper.

Dated:     January 14, 2008
           New York, New York

                              DAVIS & GILBERT LLP


                              By: *Scott M. Singer*
                              Howard J. Rubin
                              Scott M. Singer
                              1740 Broadway
                              New York, New York 10019
                              (212) 468-4800
                              hrubin@dglaw.com
                              ssinger@dglaw.com


                              Counsel for Defendant